IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SUSAN SHAIN, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-25-02095 |
| WASHINGTON COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Three Motions are pending before the Court. Each Defendant has filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (ECF Nos. 6, 7), and Plaintiff has filed a Motion for Relief Pursuant to Federal Rule of Civil Procedure 56(d) (ECF No. 11). The Court will construe Defendants' Motions as motions to dismiss and will grant them. Therefore, Plaintiff's Complaint will be dismissed, and her Rule 56(d) Motion will be denied as moot.

### I.   BACKGROUND

Plaintiff Susan Shain brought this action pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, against Defendants Washington County, Maryland ("the County") and the Housing Authority of Washington County ("HAWC"). The Court recounts the following factual allegations from the Complaint.

Plaintiff worked as a Housing Choice Voucher Specialist for HAWC from July 2022 to September 2023, when her employment was terminated. (ECF No. 1 ¶ 15.) Before she began working for HAWC, Plaintiff was diagnosed with Wolff-Parkinson-White disorder, a congenital heart defect. (*Id.* ¶ 30.) On August 17, 2023, Plaintiff suffered a severe medical episode at work.

(*Id.* ¶ 32.) On the advice of her doctors, Plaintiff requested to take two weeks off of work. (*Id.* ¶ 34.) However, HAWC's Executive Director, Morgan Gower, told Plaintiff that HAWC was not a covered employer under the FMLA because it had fewer than 50 employees. (*Id.* ¶ 40.) Thus, in Gower's view, Plaintiff had no right to take medical leave, so Gower denied Plaintiff's request. (*Id.* ¶ 38.)

Because her leave request was denied, Plaintiff then agreed to return to work right away. (*Id.* ¶ 42.) However, Gower stated that Plaintiff needed to provide a doctor's note which cleared Plaintiff to return to work. (*Id.* ¶ 43.) Plaintiff responded that her doctors would not provide this note. (*Id.* ¶ 44.) When Plaintiff returned to work anyway, Gower instructed Plaintiff to leave because she did not possess medical authorization to work. (*Id.* ¶ 47.) Shortly thereafter, Plaintiff's employment was terminated. (*Id.* ¶ 48.)

In her lawsuit, Plaintiff alleges two violations of the FMLA. She asserts that Defendants interfered with her attempt to exercise her right to take FMLA leave, *see* 29 U.S.C. § 2615(a)(1), and retaliated against her for seeking to take FMLA leave, *see id.* § 2615(a)(2). Defendants rebut that Plaintiff had no right to take FMLA leave because the statute only applies to employers of 50 or more people. 29 U.S.C. § 2611(4)(A)(i). Notably, Defendants attach numerous exhibits to their Motions and base their arguments, in part, on this information, rather than solely on the allegations in the Complaint.

## II. STANDARD OF REVIEW

Defendants have both styled their Motions as motions to dismiss, but, in the alternative, for summary judgment. Under Rule 12(d), Federal Rules of Civil Procedure, if the Court considers materials outside the pleadings, then it must consider the Motions as seeking summary judgment. As Judge Chuang has explained:

2

> Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." [Fed. R. Civ. P. 12(d).] "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded a reasonable opportunity for discovery to obtain information essential to oppose the motion.

*Familia v. High*, No. CV TDC-21-1139, 2022 WL 899747, at *3 (D. Md. Mar. 28, 2022) (internal quotation marks and citation omitted).

Here, "[t]he notice requirement has been satisfied by the title of [Defendants'] Motion." *Id.* As for the second requirement, to show that she has not received a reasonable opportunity for discovery, the nonmoving party must present an affidavit under Rule 56(d) which shows that, "for specified reasons," she "cannot present facts essential to justify [her] opposition." Fed. R. Civ. P. 56(d). Plaintiff's counsel has submitted an affidavit explaining that discovery is required on numerous issues, including, *inter alia*, who is responsible for hiring and firing HAWC employees, what level of involvement the County's Commissioners have with HAWC, and which people specifically determined that Plaintiff was ineligible for FMLA leave. (ECF No. 11-1 at 2–4.) As explained below, these facts are all relevant to the Court's resolution of the legal issues at stake. Thus, because Plaintiff adequately explains that she needs discovery, the Court will treat Defendants' Motions as motions to dismiss.

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

When deciding a motion to dismiss, the Court generally must not consider documents that are outside of the Complaint. However, the Court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). To be "integral," a document must be one "that by its very existence, and *not the mere information it contains*, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation and internal quotation marks omitted) (emphasis in original). "[C]ourts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute." *Id.* at 611 n.4 (citation and internal quotation marks omitted). The documents that Defendants attach to their Motions do not meet this strict standard. Thus, the Court will not consider them.

### III. DISCUSSION

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" if "a serious health condition . . . makes the employee unable

4

to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). There are three requirements to being an "eligible employee": the employee must have (1) worked 1,250 hours (2) during the previous 12 months (3) for an employer. *Id.* § 2612(2)(A). The parties agree that Plaintiff meets the first two requirements. The issue in this case is whether Plaintiff worked for an "employer."

In relevant part, the FMLA defines an "employer" as any person, entity, or public agency "engaged in commerce or in any industry affecting commerce who employs 50 or more employees." *Id.* §§ 2611(4)(A)(i), 2611(4)(B). As applicable here, a "public agency" is defined as "the government of a State or political subdivision thereof [or] any agency of . . . a State, or a political subdivision of a State." *Id.* § 203(x).

A central purpose of the FMLA is "to entitle employees to take reasonable leave for medical reasons." *Id.* § 2601(b)(2). But it seeks to only allow this entitlement "in a manner that accommodates the legitimate interests of employers" and "balance[s] the demands of the workplace." *Id.* § 2601(b)(1), (3). That is why, for an employer to be covered under the statute, it must have 50 or more employees. Congress determined that imposing the leave requirement on smaller employers would inflict too great a burden on them. *Engelhardt v. S.P. Richards Co.*, 472 F.3d 1, 5 (1st Cir. 2006).

At the same time, the Department of Labor ("DOL")—in its implementing regulations—and the courts have recognized that there are situations where the identity of an employer is not so easy to discern. For instance, two employers may both be covered by the FMLA with respect to a single employee, if those employers are joint employers or an integrated employer. *See generally Salinas v. Com. Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017); *Hukill v. Auto Care, Inc.* 192 F.3d 437 (4th Cir. 1999). And two public agencies can sometimes be considered a single employer for

purposes of the 50-employee rule. *See* 29 C.F.R. § 825.108. Plaintiff argues that at least one of these situations applies here, thereby entitling her to FMLA leave. But ultimately, her Complaint fails to allege facts sufficient to prove any of these three alternatives.

### A. Joint Employers

It is well established that two separate employers may both be liable under the FMLA if they jointly employ a worker. *See, e.g., Quintana v. City of Alexandria*, 692 F. App'x 122, 125 (4th Cir. 2017) (unpublished); *West v. J.O. Stevenson, Inc.*, 164 F. Supp. 3d 751, 765 (E.D.N.C. 2016). The parties agree on this point. Where they disagree is on two subsequent points: (1) how to determine whether there is a joint employment relationship; and (2) if there is joint employment, whether both employers, or just one, must provide FMLA leave.

Beginning with the first question, the parties debate whether the Court should use the joint employment test fashioned for Title VII of the Civil Rights Act of 1964, *see Butler v. Drive Auto. Indus. of Am. Inc.*, 793 F.3d 404 (4th Cir. 2015), or that utilized under the Fair Labor Standards Act ("FLSA"), *see Salinas v. Com. Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017). *Butler* lays out a nine-factor test which examines which putative employer controls the employee and the degree of economic dependence an employee has on a putative employer. 793 F.3d at 411, 414. Meanwhile, *Salinas* sets out a six-factor test that focuses on whether putative employers codetermine "the essential terms and conditions of a worker's employment." 848 F.3d at 129–30, 141.

The Court agrees with Plaintiff that *Salinas* fits better in the FMLA context. The Fourth Circuit has explained that "Congress intended for the FMLA to provide employee protections similar to those provided by the FLSA." *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 371 (4th Cir. 2005), *reh'g granted, judgment vacated* (June 14, 2006), *opinion reinstated on reh'g*, 493 F.3d 454 (4th Cir. 2007) (citations omitted). And "Congress indicated that the FMLA was to be

implemented in the same way as the FLSA." *Id.* at 373–74. Furthermore, the FMLA's definitions of "employ" and "public agency" explicitly come from the FLSA. 29 U.S.C. § 2611(4)(A)(iii) (referring to 29 U.S.C. § 203(g), (x)); *accord Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006) ("The definition of 'employer' under the FMLA is very similar to the definition of 'employer' under the FLSA."). As one court in this Circuit has explained, in labor relations statutes such as the FMLA and FLSA, "to employ" means "to suffer or permit to work." *West*, 164 F. Supp. 3d at 763 n.6. But, in civil rights statutes such as Title VII, "to employ" is defined more narrowly by the common law. *Id.* Indeed, the *Butler* court made this exact point. *Butler*, 793 F.3d at 412 n.10. Thus, there is considerable evidence showing both the similarities between the FMLA and FLSA and that Congress explicitly intended to define the employer-employee relationship more broadly in the FMLA than it did in Title VII. Having concluded as much, the Court finds that *Salinas*' joint employment test, rather than *Butler*'s, is more readily applicable to FMLA cases.[1]

Under *Salinas*, joint employment is determined by examining "whether two or more persons or entities are 'not completely disassociated' with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment." 848 F.3d at 141 (quoting 29 C.F.R. § 791.2(a) (2020) (rescinded by 86 Fed. Reg. 40939-01 (2021))).[2] Thus, unlike *Butler*, which focuses on the relationship between employee and

---

[1] As the County points out, this Court has previously applied *Butler* in the FMLA context. *DiPaola v. Aramark Corr. Servs., LLC*, No. CV JKB-24-1616, 2024 WL 4265290, at *4 (D. Md. Sept. 23, 2024). However, when the Court decided *DiPaola*, no party argued for *Salinas*' application. Now, with the benefit of adversarial briefing and additional research, the Court determines that *Salinas* sets out the better test for the FMLA. This is also in line with the Court's previous recognition of the similarities between the FMLA and FLSA. *See Lesser v. Balt. City Bd. of Sch. Comm'rs*, No. CV JKB-17-046, 2017 WL 2733938, at *2 (D. Md. June 26, 2017).

[2] The joint employment regulation that *Salinas* relies on was amended in March 2020, *see* Joint Employer Status Under the Fair Labor Standards Act, 85 Fed. Reg. 2820-01 (Jan. 16, 2020), and later rescinded in October 2021, *see* Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule, 86 Fed. Reg. 40939-01 (July 30, 2021). However, regardless of the regulation's history, *Salinas* remains binding precedent in this Circuit. *Gibbons v. Gibbs*, 99 F.4th 211, 213 (4th Cir. 2024) ("When a panel of this Court decides a legal issue in a published opinion, that ruling

putative employer, *Salinas* "focuses on the relationship between the putative joint employers" themselves. *Id.* *Salinas* applies a totality-of-the-circumstances test but explains that six factors are most critical. *Id.* at 141–42. These factors are:

> (1) [T]he shared control or supervision of the employee directly or indirectly, (2) the power to hire and fire employees, (3) degree of permanency and duration of the joint relationship, (4) whether through shared management one joint employer controls the other, (5) whether work is performed on premises owned or controlled by one or more putative joint employers, and (6) the extent of shared responsibilities for payroll, facilities, equipment, tools and materials necessary to complete the work.

*Tombros v. Cycloware, LLC*, No. 8:19-CV-03548-PX, 2020 WL 4748458, at *2 (D. Md. Aug. 17, 2020) (citing *Salinas*, 848 F.3d at 141).

Before applying the *Salinas* factors to this case, the Court addresses one wrinkle. Although neither party discusses it, the Fourth Circuit recently decided an FMLA joint employment claim and did not apply *Salinas* or *Butler*. *Shipton v. Baltimore Gas & Elec. Co.*, 109 F.4th 701 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 774 (2024). Rather, in *Shipton*, the Fourth Circuit stated that there must be evidence of "common management" and "centralized control" to prove a joint employer relationship under the FMLA. *Id.* at 710. But the case provides little analysis on this issue. Additionally, these two factors come from the DOL regulation addressing integrated employers, not joint employers. *Compare* 29 C.F.R. § 825.104(c)(2), *with* 29 C.F.R. § 825.106. Finally, the case that *Shipton* cited for its proposition—arising out of the First Circuit—also stated that these two factors were only for the integrated employer test. *See Engelhardt v. S.P. Richards Co.*, 472 F.3d 1, 6–7 (1st Cir. 2006). Thus, the Court is unsure that *Shipton* creates a binding test for determining joint employment under the FMLA. Rather, as explained above, the Court finds

---

is binding on all future panels and district courts within this circuit unless it is abrogated by the Supreme Court or by an en banc decision of this Court."); *see also Rettig v. All. Coal, LLC*, No. 2:21-CV-08, 2023 WL 5673961, at *3 n.3 (N.D.W. Va. Sept. 1, 2023) (concluding that *Salinas* still applies despite the regulation's rescission).

Plaintiff's argument that *Salinas* applies to FMLA joint employer claims to be quite persuasive. However, the Court need not resolve the apparent discrepancy now because both *Salinas* and *Shipton* lead to the same result in this case.

The Court now turns to the facts presented here. As to the relationship between the County and HAWC, Plaintiff alleges that the County appoints the members of HAWC's Board of Commissioners, one County Commissioner serves on HAWC's Board, and the County can approve or disapprove housing projects planned by HAWC. (ECF No. 1 ¶¶ 20, 21, 27.) She also states that the County can terminate employees of HAWC. (*Id.* ¶ 22.) As to the relationship between the County and HAWC's employees, Plaintiff alleges that it was the County that provided her with an employment policy explaining her rights under the FMLA, administered benefits, and sent her a COBRA continuation of health benefits form after her termination. (*Id.* ¶¶ 23–25.)

Under *Salinas*, Plaintiff has only a modest burden at the motion to dismiss stage because "the question of joint employment is often best left for resolution after discovery." *Tombros*, 2020 WL 4748458, at *2; *see also Hall v. DIRECTV, LLC*, 846 F.3d 757, 771 (4th Cir. 2017). But that does not mean that Plaintiff has no burden at all; she still must state a plausible claim for relief. And here, she has not done so. In *Shipton*, the Fourth Circuit explained that the appearance of an entity's name on "various policy documents" did not "show evidence of common management or centralized control." 109 F.4th at 710. And in *Hall* (a companion case to *Salinas*), the Fourth Circuit required much more at the motion to dismiss stage. There, the complaint was "replete with allegations that [the putative joint employers] shared authority over hiring, firing, and compensation." *Hall*, 846 F.3d at 773. Furthermore, the complaint described contractual agreements among the putative joint employers which showed that they each had "the authority to direct, control, and supervise nearly every aspect of Plaintiffs' day-to-day job duties." *Id.* at 772.

9

Here, there are no allegations that the County supervised Plaintiff's day-to-day duties. Thus, while the burden is low, the allegations in the Complaint do not satisfy *Shipton* or *Salinas*. Accordingly, the Court concludes that, as currently alleged, HAWC and the County did not jointly employ Plaintiff.

Because the Court concludes that HAWC and the County are not plausibly alleged to be joint employers, it need not decide which entity was required to provide FMLA leave as the primary employer, *see Quintana v. City of Alexandria*, 692 F. App'x 122, 125 (4th Cir. 2017) (unpublished), or if both entities could be responsible under a theory of joint and several liability (*see* ECF No. 13 at 20–23).

### B. Integrated Employer

The Court next turns to Plaintiff's argument that the County and HAWC were an integrated employer. "Under the 'integrated employer' test, several [entities] may be considered so interrelated that they constitute a single employer." *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999), *abrogated on other grounds by, Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006). The Court considers four factors under this test: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) the degree of common ownership/financial control. *Id.* (citing 29 C.F.R. § 825.104(c)(2)). While no single factor is conclusive, "control of labor operations is the most critical factor," *id.*, because, as noted above, Congress intended the FMLA to apply only to employers that are large enough to withstand its burdens.

Applying this test, and considering the FMLA's expressly codified purpose, Plaintiff has again failed to state a claim. Beginning with the first factor, the allegations that the County appoints HAWC's Board of Commissioners and appoints one of its own Commissioners to serve

on HAWC's Board do not itself show common management. Indeed, there are no allegations that "a common manager . . . runs day-to-day operations [or] has the authority to hire and fire employees." *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 603 (D. Md. 2014). As for the second factor, Plaintiff alleges that the County administered her benefits and created employment policies. She also alleges that the County set HAWC's policies for distributing housing funds and could approve or disapprove HAWC's housing projects. These allegations are more detailed and numerous, so this factor leans in Plaintiff's favor. As to financial control, there are no factual allegations in the Complaint. Finally, as for the most important factor—centralized control of labor operations—it was HAWC's Executive Director, Morgan Gower, that made every decision relating to Plaintiff's medical leave and termination. (*See* ECF No. 1 ¶¶ 35–45.) While Plaintiff alleges that Gower communicated with the County's Human Resources Division before the termination (*id.* ¶ 49), this bare allegation does not lend an inference that the County ordered Plaintiff's termination. Rather, the Complaint makes clear that Gower was the one controlling Plaintiff's employment. Thus, while Plaintiff has alleged some degree of integration between the County and HAWC, she has not alleged with any specificity that this integration exists specifically over HAWC's *labor* relations. Accordingly, as currently alleged, HAWC and the County are not an integrated employer within the meaning of the FMLA.

### C. Public Agency Regulation

Finally, the Court addresses whether HAWC and the County can be considered a single public agency, and therefore as the same employer under the FMLA. 29 C.F.R. § 825.108(c)(1) states:

> A State or a political subdivision of a State constitutes a single public agency and, therefore, a single employer for purposes of determining employee eligibility. For example, . . . a county is a single employer . . . . Whether two agencies of the same State or

11

> local government constitute the same public agency can only be determined on a case-by-case basis. One factor that would support a conclusion that two agencies are separate is whether they are treated separately for statistical purposes in the Census of Governments issued by the Bureau of the Census, U.S. Department of Commerce.

29 C.F.R. § 825.108(c)(1).[3] While the Fourth Circuit has not addressed this regulation, other Circuits have noted that an additional important factor is how state law treats the government entities. *See Fain v. Wayne Cnty. Auditor's Off.*, 388 F.3d 257, 260 (7th Cir. 2004); *Rollins v. Wilson Cnty. Gov't*, 154 F.3d 626, 629 (6th Cir. 1998). Here, Plaintiff alleges that the County and HAWC "are treated as a single government entity in the 2022 Census of Governments." (ECF No. 13 at 3.) But Plaintiff also readily concedes that HAWC and the County are "separate legal entities." (*Id.* at 9.) And to be sure, under Maryland law, housing authorities are their own "public body corporate and politic." Md. Code Ann., Hous. & Cmty. Dev. § 12-201 (West 2020). They also may sue and be sued, make contracts, and own real and personal property. *Id.* § 12-502. Thus, despite Plaintiff's allegation that HAWC and the County are treated as a single entity in the Census, state law clearly indicates that they are separate entities, a point which Plaintiff does not dispute. Accordingly, HAWC and the County are not the same employer for purposes of the FMLA.

## IV. CONCLUSION

For the foregoing reasons, the Court construes Defendants' Motions (ECF Nos. 6, 7) as motions to dismiss and will grant them. Thus, Plaintiff's Complaint will be dismissed, and her Rule 56(d) Motion (ECF No. 11) will be denied as moot.

---

[3] Plaintiff discusses this regulation at length in her briefing but seems to contend that the regulation's definition of "public agency," and its emphasis on the Census, is merely another factor to be considered in the integrated employer analysis. But that is incorrect. This regulation provides its own distinct definition of a public agency employer, and therefore, its own path to relief. *See Miller v. Cnty. of Rockingham*, No. 5:06CV00053, 2007 WL 2317434, at *7 (W.D. Va. Aug. 9, 2007). Plaintiff either misreads the regulation or recognizes that she will not prevail and thus attempts to creatively include the Census factor into the integrated employer analysis instead. Either way, 29 C.F.R. § 825.108 provides no relief to Plaintiff.

DATED this 5 day of February, 2026.

BY THE COURT:

_____
James K. Bredar
United States District Judge